PEOPLE v BIONDO

1. CRIMINAL LAW—PROSECUTOR'S IMPROPER ARGUMENT—CIVIC DUTY—
UNRELATED ISSUES—PREJUDICE.

The "civic duty" tactic of a prosecutor in his argument to the jury in a criminal trial has been repeatedly condemned as prejudicial because it injects issues unrelated to a particular defendant's case.

2. CRIMINAL LAW—PROSECUTOR'S IMPROPER ARGUMENT—CIVIC DUTY—
PRESUMPTIONS—GUILT OR INNOCENCE.

A prosecutor may not subtly convert the presumption of innocence into a presumption of guilt by appealing to jurors to perform a civic duty.

3. CRIMINAL LAW—PROSECUTOR'S IMPROPER ARGUMENT—EVIDENCE—
ISSUES—GUILT OR INNOCENCE—CONTROLLING LAW—CONSE-
QUENCES OF JURY VERDICT.

A prosecutor should refrain from argument which would divert a jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of an accused under the controlling law, or by making predictions of the consequences of a jury's verdict.

4. CRIMINAL LAW—PROSECUTOR'S IMPROPER ARGUMENT—SOCIAL FEARS
OF JURY—RELEVANCY—ISSUES—GUILT OR INNOCENCE.

Appealing to the social fears of a jury is hardly relevant to the sole issue of the trial, which is the guilt or innocence of a defendant.

REFERENCES FOR POINTS IN HEADNOTES
[1–4] 75 Am Jur 2d, Trial §§ 193, 261, 280 *et seq.*
Propriety and effect of prosecuting attorney's argument to jury indicating his belief or knowledge as to guilt of accused. 50 ALR2d 766.
Counsel's appeal in criminal case to racial, national, or religious prejudice as ground for mistrial, new trial, or reversal. 45 ALR2d 303.
[5] 59 Am Jur 2d, Pardon and Parole § 92 *et seq.*

5. Criminal Law—Probation—Violation of Probation—Proba-
    tionary Offense—Hearings—Original Trial Judge—Succes-
    sor Judge—Post-Sentence Motions.
    A probation violation matter should be heard before the original
    judge who granted probation; in his absence because of illness  .
    or other incapacity, a successor of the trial judge should hear
    all post-sentence motions, unless he or she is unavailable or no
    successor has yet been named.

Appeal from Recorder's Court of Detroit, Joseph A. Gillis, J. Submitted May 13, 1977, at Detroit. (Docket Nos. 28206, 29131.) Decided June 7, 1977. Leave to appeal applied for.

Salvatore Biondo was convicted of breaking and entering with intent to commit a larceny and of a probation violation. Defendant appeals. Conviction for breaking and entering reversed and remanded. Probation violation conviction reversed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward R. Wilson,* Research, Training and Appeals, and *Andrea L. Solak,* Assistant Prosecuting Attorney, for the people.

*Thomas J. McCallum,* for defendant.

Before: Bashara, P. J., and Quinn and Beasley, JJ.

Bashara, P. J. Defendant Salvatore Biondo was convicted by a jury of breaking and entering of a business establishment with intent to commit a larceny. MCLA 750.110; MSA 28.305. This conviction resulted in a probation violation sentence from an earlier conviction. Defendant appeals from both the breaking and entering and the probation violation convictions.

Defendant's most substantial issue concerns the

arguments of the prosecutor at trial. This Court has been increasingly faced with meritorious claims of prosecutorial misconduct contrary to clearly expressed precedent. See *People v LaForte,* 75 Mich App 582; 256 NW2d 44 (1977), *People v Osborne,* 75 Mich App 600; 256 NW2d 45 (1977). We fail to understand why some prosecutors insist upon employing prejudicial lines of argument as a form of rhetorical overkill. We must therefore continue to condemn apparent reckless disregard for the established scope of proper jury argument.

The prosecutor in the present case utilized a line of argument generally termed as "civic duty". He began his closing argument in the following manner:

"Mr. LA BRET: Thank you. Ladies and Gentlemen of the Jury.

"This has not been a long case, but it's an important case not only to Mr. Biondo, whose interests are naturally focused upon what's happening here in this courtroom today, but it is an important case to the citizens of this city; because the businesses and businessmen who do work here within the City of Detroit are the life blood of the city, and businesses pay a business tax which go to support services, such as, police and fire and garbage collection, and what have you.

"And if these businesses, of course, are preyed upon, then they will leave the city, and the city will die."

Apparently unconvinced that he had sufficiently impressed upon the jury the seriousness of the city's crime problems, the prosecutor returned to this area during his rebuttal:

"I indicated to you at the beginning of my closing argument that everybody is entitled, everybody's got rights.

\* \* \*

"Of course, all of you individuals, you members of the jury, everybody is entitled; but this city is entitled.

"What do I mean by that? What do I mean by this city is entitled?"

Defendant's counsel then objected to this line of argument. The trial court allowed the prosecutor to continue:

"What do I mean by the city is entitled? The city is 210 years old. This was a great city, and it can be a great city again. Why? Because each of us who live in Detroit—and I live here, too—have a responsibility and duty to the city.

"Now the complainant Mr. Schwall is a businessman here in town. Being a businessman here in this city, he supplies people in the city. He pays taxes in the city. He belongs to groups in the city.

"And he comes into this courtroom, and he says I accuse Salvatore Biondo of going into my greenhouse and taking my stuff, my goods that I paid for, that I worked hard for; and he's saying to you, ladies and gentlemen, I'm a citizen just like you are, he took my goods, they were in his car, he did all these things; and he's saying to you, as he is entitled to say to you, what are you going to do about it."

Defendant made a motion for mistrial based upon the prosecution argument, which was denied.

The "civic duty" tactic of jury argument has been repeatedly condemned by this Court as prejudicial since it injects into a trial issues unrelated to the particular defendant's case. In *People v Farrar*, 36 Mich App 294, 298–299; 193 NW2d 363 (1971), the Court adopted the language of the ABA Project on Standards for Criminal Justice, The Prosecution Function, Std. 5.8(d), as applicable to this issue:

"The prosecutor may not subtly convert the presump-

tion of innocence into a presumption of guilt by appealing to the jurors to perform a civic duty to support the police:

' "The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict." '

In *People v Gloria Williams,* 65 Mich App 753; 238 NW2d 186 (1975), this Court reversed the conviction after the prosecutor had argued to the jury that they could affect the drug traffic in the city of Detroit by finding the defendant guilty. The Court stated at 756:

"We recognize, too, that jurors share the average citizen's desire to eliminate the narcotics traffic. In such an emotion-laden situation, sensibilities are easily inflamed. Because emotional reaction to social problems should play no role in the evaluation of an individual's guilt or innocence, prosecutors must exercise special care to avoid arousing jurors' emotions concerning such issues.

"In the instant case, by arguing that the jurors had an 'opportunity to effect [sic] the drug traffic in this city', the prosecutor appealed to the jurors' fears and encouraged them to go outside the evidence and decide the case on the basis of their desire to alleviate the drug problem. This type of prosecutorial argument does not comport with the mandate of *Farrar, supra,* and it will not be allowed by this Court. Consequently, defendant's conviction must be reversed."

The present case is a direct parallel to the decision in *Williams, supra.* The prosecutor, who we must assume was aware of the *Farrar* rule, nevertheless sought to cajole the jury into believing that a guilty verdict would be a substantial act

toward saving Detroit from financial ruin. Appealing to the social fears of the jury can hardly be said to be relevant to the sole issue of the trial, that being Mr. Biondo's guilt or innocence.

We are required by both the logic and the language of *Farrar, supra,* and *Williams, supra,* to reverse the conviction and remand for a new trial.

The reversal of the breaking and entering conviction of necessity means that the resulting probation violation conviction is set aside.

Defendant argues that a probation violation matter should be heard before the original trial judge for the probationary offense. MCLA 771.4; MSA 28.1134 and GCR 1963, 529.2, support this position. In the present case, however, the original sentencing judge no longer sits on the Recorder's Court. The question thus becomes whether the revocation hearing must be held before his successor, or before any judge of that court.

In the present case the trial judge denied defendant's motion to disqualify himself so that the successor judge could conduct the hearing. RCR 30 states in its relevant part:

"Whenever a motion for new trial or to vacate sentence or other proceeding subsequent to a sentence in any cause tried in this Court is filed with the Clerk of this Court, and the Trial Judge to which such motion or proceeding should be assigned has been absent from the bench because of illness or other incapacity for at least one term last past the date of filing of such pleading, or in the event any Judge of this Court shall die *and there is unusual delay in the appointment or election of his successor,* the Clerk of this Court shall notify the Presiding Judge of this Court of such a fact by a notice attached to the court file of said cause, and the said Presiding Judge on the day noticed for hearing of any said motion or proceeding shall assign such motion or proceeding to any of the Judges of this Court present

and available to accept such assignment on said day, with a written direction to said Judge to proceed to hear said motion or proceeding and render a final decision." (Emphasis added.)

The clear implication of the rule is that the successor of the trial judge should hear all post-sentence motions unless he or she is unavailable or no successor has yet to be named. The successor had heard a motion to set aside the original plea one week prior to the trial judge's actions. There is no question but that the successor judge was available to conduct the probation violation hearing.

Defendant's conviction for breaking and entering is reversed and remanded. The probation violation conviction is reversed, and any future probation violation matters on the assault charge should be heard before the successor to the original trial judge.

BEASLEY, J., concurs in the result.