PEOPLE v ROHN

Docket No. 78-3873. Submitted June 13, 1980, at Detroit.—Decided
July 18, 1980. Leave to appeal applied for.

Clarice L. Rohn was convicted of aiding and abetting first-degree
murder and conspiring to commit first-degree murder in St.
Clair Circuit Court, Halford I. Streeter, J. She was sentenced to
two concurrent life terms. The defendant appeals alleging
numerous errors. *Held:*

1. The prosecutor's interjection into closing argument of the
jury's religious duties in calling for conviction was an attempt
to inflame the passions and fears of the jury, requiring reversal.
In light of its highly prejudicial nature, an objection and a
motion for mistrial were sufficient to preserve the issue for
appeal.

2. A statute preserving the confidentiality of presentence
reports that conflicts with the constitutionally protected rights
of confrontation and impeachment through prior inconsistent
statements must give way to those constitutional rights. Defen-
dant had asked for and was denied access to presentence
reports of three prosecution witnesses, accomplices to the mur-
der, which contained material relating to their versions of the

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 63 Am Jur 2d, Prosecuting Attorneys § 27.
[2, 3] 75 Am Jur 2d, Trial §§ 225, 280, 283.
    Counsel's appeal in criminal case to racial, national, or religious
    prejudice as ground for mistrial, new trial, or reversal. 45 ALR2d
    303.
[3] 5 Am Jur 2d, Appeal and Error §§ 624-627.
    75 Am Jur 2d, Trial §§ 315, 317.
[4, 5] 21 Am Jur 2d, Criminal Law § 583.5.
    Defendant's right to disclosure of presentence report. 40 ALR3d
    681.
[4, 6] 81 Am Jur 2d, Witnesses § 522.
[5] 21 Am Jur 2d, Criminal Law §§ 333-337.
    Federal constitutional right to confront witnesses—Supreme Court
    cases. 23 L Ed 2d 853.
[6] 81 Am Jur 2d, Witnesses §§ 619, 620, 624.
[7] 29 Am Jur 2d, Evidence §§ 252, 253, 298.
[8] 75 Am Jur 2d, Trial §§ 651, 652.

crime and were requested for impeachment purposes. The denial of access was reversible error.

3. The trial court committed reversible error in allowing the prosecutor to impeach the testimony of an accomplice he had called as a prosecution witness even though he did not allege surprise at the testimony.

4. The trial court reversibly erred in allowing the prosecutor to introduce evidence of similar acts by defendant. Evidence of similar acts of a defendant may be admitted only where it is established that (a) there is substantial evidence to show that the defendant committed the bad act, (b) the act must tend to prove one of the statutory purposes, (c) one of those purposes must be "in issue", and (d) the probative value of admission must outweigh any prejudicial effect.

5. The trial court reversibly erred in preventing the defendant from cross-examining a witness about an alleged deal with the prosecutor.

6. A jury instruction requested by the defendant must be given by the trial judge where there was evidence adduced at the trial which could have supported the requested instruction. The court reversibly erred in refusing to instruct on the lesser offense of accessory after the fact.

Reversed and remanded.

1. Criminal Law — Prosecuting Attorneys — Closing Arguments — Fair Trial.

Prosecuting attorneys are accorded great latitude regarding their arguments and conduct, however it is paramount that prosecutors pursue any lawsuit with as equal a concern for ensuring a defendant a fair trial as for convicting him.

2. Criminal Law — Trial — Fair Trial — Prosecuting Attorneys — Closing Arguments — Extraneous Matters.

A defendant's opportunity for a fair trial may be jeopardized when the prosecution interjects issues broader than the guilt or innocence of the accused, such as appealing to a jury's civic duty or when extraneous racial, religious or ethnic matters are introduced at trial.

3. Criminal Law — Motions and Orders — Prosecuting Attorney — Closing Arguments — Appeal.

An objection and a motion for mistrial are sufficient to preserve for appellate review the issue of improper argument by the prosecuting attorney, even though no curative instruction was

requested by the defendant, where the argument may have inflamed the jury's passions and fears.

4. WITNESSES — CRIMINAL LAW — PRESENTENCE REPORTS — ACCOMPLICES.

The withholding of presentence reports of prosecution witnesses from the defendant where those witnesses were accomplices and the defendant requested the reports for impeachment purposes constitutes error.

5. CRIMINAL LAW — CONSTITUTIONAL LAW — STATUTES — PRESENTENCE REPORTS — CONFRONTATION — IMPEACHMENT.

A statute preserving the confidentiality of presentence reports that conflicts with the constitutionally protected rights of confrontation and impeachment through prior inconsistent statements must give way to the constitutional rights.

6. CRIMINAL LAW — ACCOMPLICES — IMPEACHMENT.

A prosecuting attorney may not call an accomplice as his own witness and then impeach him, in the absence of surprise.

7. CRIMINAL LAW — EVIDENCE — SIMILAR ACTS — DEFENDANTS — STATUTES.

Evidence of similar acts of a defendant may be admitted only where it is established that (a) there is substantial evidence to show that the defendant committed the bad act, (b) the act must tend to prove one of the statutory purposes, (c) one of those purposes must be "in issue", and (d) the probative value of admission must outweigh any prejudicial effect (MCL 768.27; MSA 28.1050).

8. CRIMINAL LAW — INSTRUCTIONS TO JURY.

A jury instruction requested by the defendant must be given by the trial judge where there is evidence adduced at the trial which may support the requested instruction.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Peter E. Deegan,* Prosecuting Attorney, and *Peter R. George,* Chief Appellate Attorney, for the people.

*Richard B. Ginsberg,* Assistant State Appellate Defender, for defendant on appeal.

Before: BASHARA, P.J., and D. C. RILEY and E. A. QUINNELL,* JJ.

D. C. RILEY, J. Defendant was originally charged with aiding and abetting first-degree murder, MCL 767.39; MSA 28.979, MCL 750.157a; MSA 28.354(1), and conspiring to commit first-degree murder, MCL 750.157a; MSA 28.354(1), MCL 750.316; MSA 28.548. Following a 1975 jury trial wherein it was alleged that the defendant had arranged to have her husband killed, she was found guilty and sentenced to life imprisonment on both counts. This Court reversed and re-manded, and defendant was retried on both counts, commencing February 27, 1978. She again was found guilty and sentenced to two concurrent life imprisonment terms. Defendant now appeals as of right.

Defendant asserts a plethora of errors, many of which necessitate reversal and remand for new trial. The first of these is with respect to the prosecutor's closing argument relating to the jurors' religious duties.

Prosecutors are accorded great latitude regarding their arguments and conduct. See *People v Duncan,* 402 Mich 1; 260 NW2d 58 (1977). However, it is paramount that prosecutors pursue any lawsuit with as equal a concern for ensuring a defendant a fair trial as for convicting him. *People v Florinchi,* 84 Mich App 128, 135; 269 NW2d 500 (1978). A defendant's opportunity for a fair trial may be jeopardized when the prosecution inter-jects issues broader than the guilt or innocence of the accused. *People v Bryan,* 92 Mich App 208, 221; 284 NW2d 765 (1979). This is particularly true when the prosecutor appeals to a jury's civic

---

* Circuit judge, sitting on the Court of Appeals by assignment.

duty, *People v Biondo,* 76 Mich App 155; 256
NW2d 60 (1977), *People v Meir,* 67 Mich App 534;
241 NW2d 280 (1976), *People v Gloria Williams,* 65
Mich App 753; 238 NW2d 186 (1975), *People v
Farrar,* 36 Mich App 294; 193 NW2d 363 (1971), or
when extraneous racial, religious or ethnic mat-
ters are introduced at trial. See MCL 600.1436;
MSA 27A.1436, *People v Bouchee,* 400 Mich 253;
253 NW2d 626 (1977), *People v Hill,* 258 Mich 79;
241 NW 873 (1932), *People v Theodore Jones,* 82
Mich App 510; 267 NW2d 433 (1978). See also
*George v Travelers Indemnity Co,* 81 Mich App
106, 114-115; 265 NW2d 59 (1978).

In the instant case, a hybrid reversible error
occurred. In closing argument, the prosecutor ap-
pealed to the jury's religious duties in calling for
defendant's conviction.[1] This was not a case where

---

[1] The contested statements were as follow:

"*[Assistant Prosecutor]* There are some of you jurors during the
voir dire, during the initial examination as to your qualifications as
jurors, that indicated you like to leave a decision of this magnitude to
a higher authority. So do I. So do all of us; but I call your attention to
the fact that that higher authority is no longer personally present
among us, and therefore He designates certain people as His agents to
accomplish His purpose, to find justice.

"When you swore under oath that you would sit as jurors and
deliberate in this case, all of you including myself made a commit-
ment to that higher authority that regardless of how difficult it may
be, regardless of how our personal feelings may flow, that you would
act as His agents and see that justice is done in accord with his laws;
and I call your attention to the one law that applies in this case:
Thou shalt not kill.

\* \* \*

"There is one very salient way to detect whether testimony given
by a witness is truth or falsehood, and that is, what is their purpose?
What is their motive? Do they have something to gain? I submit,
ladies and gentlemen of the jury, these witnesses who participated in
this heinous event have nothing to gain. What would it benefit them
to falsely accuse Clarice Rohn? They know they participated in a
killing. They are paying the penalty for their participation; and yet
Clarice Rohn comes before you and says, I am not guilty. I wish to be
let go.

"Can you in good conscience in accord with your oath, in accord
with your responsibility to a higher authority, say to yourselves

the prosecutor merely used improper argument in response to that of the defense, *Meir, supra,* 537, but was a proscribed example of inflaming the jury's passions and fears. Although no curative instruction was requested by the defendant, an objection and a motion for mistrial were made below. In light of the highly prejudicial nature of the prosecutor's statement, we believe defendant's actions adequately preserved this issue for our review.

Reversal is also mandated based on the court's withholding of the presentence reports of three prosecution witnesses, all accomplices in defendant's husband's murder. Prior to trial defendant had sought access (for impeachment purposes) to those portions of the reports that related to the

Clarice Rohn is innocent and these others who have no purpose, no motive, no reason for participating in it, are suffering for it? Can you in good conscience say that; and that is what Clarice Rohn wants you to do.

\* \* \*

"This is a difficult case. It is difficult for everybody who participated in it; and I ask you again, recognize what your oath means, that the higher authority that some of you wish to leave these things to has delegated you twelve people to make a determination to uphold His law, thou shalt not kill. That's why Clarice Rohn is on trial.

\* \* \*

"Now, can you in good conscience say to yourselves, we don't believe Pat Mays, Ronald Frogge. We don't believe Roy Washburn, and therefore we will say to Clarice Rohn, you are free to go. Is that responsibility to your oath? Is that the type of result that gives foundation to our system of jurisprudence?

\* \* \*

"Members of the jury, in deference to your oaths, in deference to your responsibility to the higher authority who has designated each and every one of you twelve as His agents, I ask only that you retire to the jury room and deliberate this matter. Deliberate it with an eye toward what actually took place, and arrive at a verdict. Arrive at such a verdict that you can, each and every one of you individually and collectively can return to this jury box and say to yourselves and to this Court, we have had a difficult time, but we are not shirking from that responsibility. We recognize our purpose. We recognize the task we have and we have carried it, and we have had the fortitude to bring back into this courtroom a verdict that we feel is correct."

accomplices's versions of the murder. The lower court refused.

MCL 791.229; MSA 28.2299 provides:

"All records and reports of investigations made by a probation officer, and all case histories of probationers shall be privileged or confidential communications not open to public inspection. Judges and probation officers shall have access to the records, reports, and case histories. The probation officer, the assistant director of probation, or the assistant director's representative, shall permit the attorney general, the auditor general, and law enforcement agencies to have access to the records, reports, and case histories. The relation of confidence between the probation officer and probationer or defendant under investigation shall remain inviolate."

This statute, preserving the confidentiality of presentence reports, may directly conflict with the equally protected rights of confrontation and impeachment through prior inconsistent statements. See US Const, Am VI, *People v Hallaway*, 389 Mich 265, 267; 205 NW2d 451 (1973). Where there is such a conflict, we believe that confidentiality must give way to other stronger interests. Compare *In the Matter of Baby X*, 97 Mich App 111; 293 NW2d 736 (1980).

In *Davis v Alaska*, 415 US 308; 94 S Ct 1105; 39 L Ed 2d 347 (1974), the Supreme Court held that the Sixth Amendment right of confrontation requires that a defendant be allowed to impeach a prosecution witness by cross-examination aimed at disclosing bias due to that witness's probationary status as a juvenile delinquent. The Court further held that this should be permissible even though such impeachment conflicts with Alaska's asserted interest in preserving the confidentiality of juve-

nile delinquency adjudications. As stated by the Court:

"The State's policy interest in protecting the confidentiality of a juvenile offender's record cannot require yielding of so vital a constitutional right as the effective cross-examination for bias of an adverse witness. The State could have protected Green from exposure of his juvenile adjudication in these circumstances by refraining from using him to make out its case; the State cannot, consistent with the right of confrontation, require the petitioner to bear the full burden of vindicating the State's interest in the secrecy of juvenile criminal records." *Id.,* 320.

We believe that this reasoning is applicable to the instant case as well. Although the defendants' interests differ, the *Davis* defendant sought to impeach to show a witness's bias while Rohn wants to impeach to attack the credibility of incriminating information, we agree that the latter impeachment is as equally necessary as the former. It is critically important that any finding of guilt or any sentence be predicated on accurate information. See *People v Malkowski,* 385 Mich 244, 249; 188 NW2d 559 (1971). Thus, we must conclude that the need for impeachment of criminal accusations outweighs any need for confidentiality of presentence reports. This does not mean that defendants should receive wholesale access to the confidential records of others. We hold only that when records of prior inconsistent statements of witnesses are necessary for effective cross-examination, they should be made available to the defendant. An *in camera* inspection procedure should be utilized by the court to limit disclosure to those statements materially inconsistent with the witness's testimony.

The trial court also erred in allowing the prose-

cution to impeach its own witness, the alleged coconspirator, Frogge. It is well settled that, in the absence of surprise, accomplices may not be impeached by the prosecution. *People v White,* 401 Mich 482, 508-509; 257 NW2d 912 (1977). Since the prosecution has not alleged any surprise and since the impeachment cannot fairly be characterized as refreshment, reversal is mandated. See *People v Brassell,* 64 Mich App 445, 449; 236 NW2d 99 (1975).

Defendant further alleges that the trial court reversibly erred by allowing testimony regarding an alleged similar act by defendant, specifically, an earlier request to have her husband killed. We agree.

Evidence of similar acts may only be admitted under certain, limited circumstances.

"In any criminal case where the defendant's motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing an act, is material, any like acts or other acts of the defendant which may tend to show his motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing the act, in question, may be proved, whether they are contemporaneous with or prior or subsequent thereto; notwithstanding that such proof may show or tend to show the commission of another or prior or subsequent crime by the defendant." MCL 768.27; MSA 28.1050.

Prior to admission, it must be proved that (1) there is substantial evidence to show that defendant committed the bad act, (2) the act must tend to prove one of the statutory purposes, (3) one of those purposes must be "in issue" and (4) the probative value of admission must outweigh any prejudicial effect. *People v Ernest Smith,* 87 Mich App 18, 22; 273 NW2d 573 (1978). We believe that

evidence of the alleged prior act was not relevant to any statutory purpose and was highly prejudicial; thus, admission was error. See *People v Major,* 407 Mich 394, 400-401; 285 NW2d 660 (1979), *People v Minney,* 155 Mich 534, 538-539; 119 NW 918 (1909).

The lower court also reversibly erred by preventing defendant from cross-examining a witness about an alleged deal with the prosecutor. See *Davis, supra,* 316-318, and *People v Reed,* 393 Mich 342, 351-354; 224 NW2d 867 (1975).

Finally, reversal is necessary because the trial court failed to give a requested instruction on the lesser offense of accessory after the fact. Since evidence was adduced which could have supported this crime, an instruction on accessory after the fact should have been given. *People v Ora Jones,* 395 Mich 379, 390; 236 NW2d 461 (1975).

The above errors are of such magnitude that a reversal for a new trial is mandated. In the following discussion, we will note several nonreversible errors so that they should not reoccur in any subsequent retrial.

In closing arguments the prosecutor implied that there was a sexual relationship between defendant and a witness, Roy Washburn, which may have been related to the murder of defendant's husband. This was improper as there was no factual support for the prosecutor's intimation. See *People v Marchese,* 84 Mich App 775; 270 NW2d 687 (1978). However, defendant did not object or request a curative instruction. We believe that an instruction would have alleviated any error. *People v Blassingame,* 59 Mich App 327, 335-336; 229 NW2d 438 (1975).

The lower court erred in allowing two defense exhibits offered for the limited purpose of a *Walker* hearing, *People v Walker (On Rehearing),*

374 Mich 331; 132 NW2d 87 (1965), to be presented to the jury. As stated in *Walker:*

"At this *[Walker]* hearing, we hold the defendant may take the stand and testify for the limited purpose of making of record his version of the facts and circumstances under which the confession was obtained. We hold further that by so doing defendant does not waive his right to decline to take the stand on trial in chief, if retrial is ordered. Neither does he waive any of the other rights stemming from his choice not to testify. This we believe comports with the apparent intention of *Jackson, supra [Jackson v Denno,* 378 US 368; 84 S Ct 1774; 12 L Ed 2d 908 (1964)], to require the issue of the voluntariness of a confession to be determined completely apart from and independent of the consideration of that issue by the jury which is considered guilt or innocence under established procedures."

We believe that a similar rationale should apply to all evidence offered by the defense at a *Walker* hearing. However, we do not believe that the defendant was prejudiced by the blanket admission here since the statement at issue supported defendant's theory of the case.

We express our view that two procedures utilized by the instant judge were undesirable. Although defendant has demonstrated no prejudice that resulted to her because the judge failed to instruct the sequestered witnesses against communicating about the case, we believe that it is advisable for the judge to do so. *People v Stanley,* 71 Mich App 56, 61-62; 246 NW2d 418 (1976). We also are convinced that a judge should not interfere with the normal presentation of proof absent any explanation of the need for deviation.

Defendant's other contentions need not be addressed.

Reversed and remanded for new trial.