PEOPLE v HOOKS

Docket No. 47390. Submitted October 9, 1980, at Detroit.—Decided
November 20, 1980. Leave to appeal applied for.

Defendant, Michele Hooks, was convicted in Detroit Recorder's
Court, Justin C. Ravitz, J., of delivery of heroin. The trial court
granted her a retrial after finding that she had been denied
effective assistance of counsel. She was reconvicted and appeals,
contending that she was denied a fair trial due to allegedly
prejudicial and inflammatory remarks the prosecutor had made
during his closing argument. Defendant also attacks the valid-
ity of the sentence imposed upon her. *Held:*

1. Although the prosecutor's remarks came perilously close to
injecting issues broader than the guilt or innocence of the
defendant and closely paralleled arguments condemned in the
past, the fact that the remarks were not objected to at trial
precludes appellate review on that issue unless a miscarriage of
justice would result. The prosecutorial argument here did not
rise to the height that could be termed a miscarriage of justice.

2. Defendant's Fifth Amendment rights were not violated by
the trial court's conditioning the possible imposition of a less
severe sentence upon the defendant's willingness to cooperate
with law enforcement officers in further investigations of drug
trafficking.

3. The trial court tailored defendant's sentence to meet her
unique characteristics and the particular circumstances of the
case and properly exercised its discretion in imposing a sen-
tence well below the maximum allowed by law. The trial court
did not violate the principle of individualized sentencing.

Affirmed.

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 58 Am Jur 2d, New Trial § 56 *et seq.*
   75 Am Jur 2d, Trial §§ 192 *et seq.,* 218 *et seq.*
[2] 5 Am Jur 2d, Appeal and Error §§ 624, 783.
   75 Am Jur 2d, Trial § 315.
[3] 4 Am Jur 2d, Appeal and Error § 541.
   5 Am Jur 2d, Appeal and Error § 723 *et seq.*
[4, 5] 21 Am Jur 2d, Criminal Law § 525 *et seq.*

1. PROSECUTING ATTORNEYS — JURY — PROSECUTOR'S REMARKS — DIVERTING JURY FROM DUTY.

A prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence and should not inject issues broader than the guilt or innocence of the accused under the controlling law.

2. PROSECUTING ATTORNEYS — PROSECUTOR'S REMARKS — FAILURE TO OBJECT.

Failure to object during trial to allegedly prejudical remarks made by the prosecutor precludes appellate review on that issue unless a miscarriage of justice would result.

3. PROSECUTING ATTORNEYS — PROSECUTOR'S REMARKS — DENIAL OF FAIR TRIAL — APPEAL.

The Court of Appeals will examine the prosecutor's argument and conduct as a whole and any cautionary instructions given by the trial court in order to determine whether a defendant has been denied a fair trial due to allegedly prejudical remarks made by the prosecutor.

4. CRIMINAL LAW — CONSTITUTIONAL LAW — SENTENCING.

A defendant's Fifth Amendment rights are not violated by a trial court's conditioning the possible imposition of a less severe sentence upon the defendant's willingness to cooperate with law enforcement officers in further investigations of drug trafficking.

5. CRIMINAL LAW — SENTENCING — INDIVIDUALIZED SENTENCES.

A sentence should be tailored to the particular circumstances of the case and the offender at the time of sentencing in an effort to balance both society's need for protection and its interest in maximizing the offender's rehabilitative potential.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Don W. Atkins,* Assistant Prosecuting Attorney, for the people.

*Bornstein, Wishnow, Shaye & Schneiderman,* for defendant on appeal.

Before: D. C. RILEY, P.J., and N. J. KAUFMAN and MACKENZIE, JJ.

D. C. RILEY, P.J. On November 10, 1977, defendant was convicted, along with two codefendants, of delivery of heroin, MCL 335.341; MSA 18.1070(41). Thereafter, she was sentenced to a prison term of 10 to 20 years. On January 2, 1979, defendant was granted a new trial by the trial court, based on a finding that she had been denied effective assistance of counsel. On retrial, she was again convicted, and on June 29, 1979, she received a sentence of 9 to 20 years. Defendant appeals as of right.

At defendant's retrial, an undercover police officer testified that he had met the defendant at an apartment in Detroit on July 25th and 26th, 1977, when he purchased $40 and $250 worth of suspected heroin from one of defendant's codefendants who was also present in the apartment. He further testified that, on the latter date, he observed a black male in the bedroom mixing white and brown powder and that the defendant was present in that room. The officer further explained to the jury how he arranged, through one of Hooks's codefendants, to have the codefendant's "connection" sell $30,000 worth of heroin to a "farmer from up north" who was actually another undercover police officer. Arrangements were made for this transaction to take place at a Detroit motel.

Subsequently, the two undercover officers, together with Hooks's codefendants, met at the motel. About five minutes after one of the codefendants placed a telephone call, defendant came into the room and removed a brown paper bag from her purse. She gave it to one of the codefendants who opened it and removed a plastic baggie that

contained heroin. All of the participants were then arrested at the scene of the crime by other police officers.

Defendant contends that the following unobjected-to remarks made by the prosecutor in his closing argument were prejudicial and inflammatory and that she was thereby denied a fair trial:

"And I guess that when it comes down to it everybody has an interest. The police officers had an interest in penetrating this organization. The defendant now has an interest in extricating herself or getting out of it in any way that she can. And I guess that you all have an interest. And I think that you really have a paramount interest. That you can come to court and sit here and listen to this trial, listen to the evidence, listen to the charade, and hold these kind of people responsible to a correct verdict. That you're not going to stand for this type of thing, $30,000.00 worth of poison going out into the community and somebody coming in an saying oh I didn't know anything about it, when all the evidence, the demeanor, and everything is completely contrary. It insults the collective common sense."

In *People v Farrar,* 36 Mich App 294; 193 NW2d 363 (1971), this Court adopted the following American Bar Association standard regarding prosecutorial conduct during argument to the jury:

"The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law." *Id.,* 299.

This Court has found comments to be particularly prejudicial when the prosecutor has made appeals to the jury to perform a "civic duty", *People v Biondo,* 76 Mich App 155; 256 NW2d 60 (1977), *People v Bass,* 88 Mich App 793; 279 NW2d 551

(1979), and when, as here, the comments have been directed toward inflaming the jury's fear regarding the drug traffic in the community, *People v Gloria Williams,* 65 Mich App 753; 238 NW2d 186 (1975).

The prosecutorial comments of which the defendant complains in the instant case are not unlike those made by the prosecutor in *Gloria Williams, supra.* There, the defendant was convicted by a jury of control of heroin. This Court reversed the defendant's conviction based on the following rebuttal argument made by the prosecutor, and to which the defendant had objected at trial:

"Ladies and gentlemen of the Jury, you have an opportunity to effect *[sic]* the drug traffic in this city. You have a voice. You have a chance to use it." *Id.,* 755.

In *Gloria Williams,* we held that this type of prosecutorial argument failed to "comport with the mandate of *Farrar, supra",* and we therefore reversed the conviction.

The prosecutor's arguments in the instant case closely paralleled those condemned in *Gloria Williams.* His repeated references to heroin as "poison" and the trial as being a "charade", as well as his appeal to the jury to consider their "paramount interest", certainly violated the spirit, if not the letter, of the standard enunciated in *Farrar, supra.* Nevertheless, there is an important distinguishing factor between *Gloria Williams* and the case at bar, namely, that here the comments were unobjected to. Even if the prosecutor's remarks were prejudicial, "[d]efendant's failure to raise an objection at trial precludes appellate review unless it would result in a miscarriage of justice". *People v Clark,* 88 Mich App 88, 92; 276 NW2d 527 (1979). In order to determine whether

the defendant was denied a fair trial, we examine the "prosecutor's argument and conduct as a whole, and the cautionary instructions given". *People v Choate,* 88 Mich App 40, 49; 276 NW2d 862 (1979). Both the explanation by the prosecutor that what he said was not to be considered evidence and the cautionary instruction by the trial court concerning the arguments of counsel reduced any prejudice.

Although we conclude that the prosecutorial argument did not rise to the height of being termed a miscarriage of justice, as that phrase is defined in *People v Robinson,* 386 Mich 551; 194 NW2d 709 (1972), and MCL 769.26; MSA 28.1096, we do note that the prosecutor in the instant case came perilously close to injecting, needlessly, reversible error into the trial. We also take this opportunity to caution prosecuting attorneys as to their special function:

"The responsibility of a public prosecutor differs from that of the usual advocate; his duty is to seek justice, not merely to convict." Code of Professional Responsibility and Canons, EC 7-13; *People v Farrar, supra,* 299.

Defendant also assails the validity of her sentence, attacking it on two grounds. Defendant first contends that the trial judge violated defendant's Fifth Amendment rights by conditioning the possible imposition of a less severe sentence upon the defendant's willingness to cooperate with law enforcement officers in further investigations of drug trafficking and, second, that the judge violated the principle of individualized sentencing due to his hard line policy against drug offenders.

Defendant's Fifth Amendment claim is premised on comments made by the sentencing judge during an *in camera* discussion with defense counsel that

the defendant could anticipate the maximum sentence unless intelligence information was offered about other drug transactions.

We conclude that defendant's Fifth Amendment rights were not violated. By contrast to the maximum sentence given to one of the codefendants, the defendant's sentence does not reveal that the court actively used its sentencing power to elicit information from the defendant or that she was punished for exercising her right to remain silent. Upon the imposition of the second sentence, not only did defendant receive four years and four months less than the maximum sentence that could have been imposed, but the judge also did not state on the record, as he had at the earlier sentencing, that his decision was being based on defendant's failure to cooperate with law enforcement officials.

Although we fail to see how defendant's Fifth Amendment rights were violated, we believe a recent United States Supreme Court decision supports our result. In *Roberts v United States,* 445 US 552; 100 S Ct 1358; 63 L Ed 2d 622 (1980), the Court held that Fifth Amendment rights are not violated where the defendant is asked to give information on drug trafficking in exchange for a favorable disposition of his or her case or where the failure of the defendant to cooperate in this manner is taken into account in imposing sentence. The Court ruled, in pertinent part, as follows:

"Unless his silence is protected by the privilege against self-incrimination * * * the criminal defendant no less than any other citizen is obliged to assist the authorities. The petitioner, for example, was asked to expose the purveyors of heroin in his own community in exchange for a favorable disposition of his case. By

declining to cooperate, petitioner rejected an 'obligatio[n] of community life' that should be recognized before rehabilitation can begin. See Hart, The Aims of the Criminal Law, 23 Law & Contemp Prob 401, 437 (1958). Moreover, petitioner's refusal to cooperate protected his former partners in crime, thereby preserving his ability to resume criminal activities upon release. Few facts available to a sentencing judge are more relevant to ' "the likelihood that [a defendant] will transgress no more, the hope that he may respond to rehabilitative efforts to assist with a lawful future career, [and] the degree to which he does or does not deem himself at war with his society' ". *United States v Grayson, supra* [438 US 41 (1978)], at 51, quoting *United States v Hendrix,* 505 F2d 1233, 1236 (CA 2, 1974)." *Roberts,* 558.

The Court then rejected the claim that the defendant's Fifth Amendment rights had been violated.

"Petitioner insists that he had a constitutional right to remain silent and that no adverse inferences can be drawn from the exercise of that right. We find this argument singularly unpersuasive. The Fifth Amendment privilege against compelled self-incrimination is not self-executing. At least where the government has no substantial reason to believe that the requested disclosures are likely to be incriminating, the privilege may not be relied upon unless it is invoked in a timely fashion" citations omitted).

"In this case, as in *Vajtauer v Commissioner of Immigration,* 273 US 103, 113 (1927), petitioner 'did not assert his privilege or in any manner suggest that he withheld his testimony because there was any ground for fear of self-incrimination. His assertion of it here is evidently an afterthought.' The Court added in *Vajtauer* that the privilege 'must be deemed waived if not in some manner fairly brought to the attention of the tribunal which must pass upon it'. *Ibid.* Thus, if petitioner believed that his failure to cooperate was privileged, he should have said so at a time when the

sentencing court could have determined whether his claim was legitimate." *Id.,* 559-560.

As for the second prong of defendant's argument, that the judge violated the principle of "individualizing sentencing", we must also disagree.

We agree that the Legislature has adopted, and the judiciary has enforced, a policy requiring individualized sentencing. *People v Chapa,* 407 Mich 309; 284 NW2d 340 (1979). As the Supreme Court stated in *People v McFarlin,* 389 Mich 557, 574; 208 NW2d 504 (1973):

"The modern view of sentencing is that the sentence should be tailored to the particular circumstances of the case and the offender in an effort to balance both society's need for protection and its interest in maximizing the offender's rehabilitative potential."

This principle was recently reaffirmed in *People v Triplett,* 407 Mich 510, 515; 287 NW2d 165 (1980), where the Court noted that:

"sentencing must be individualized and tailored to the particular circumstances of the case and the offender at the time of sentencing."

Having reviewed the record thoroughly, we cannot say the trial judge acted outside of the individualized sentencing principle as outlined above. First, the events which defendant regards as prejudicing her sentence all occurred in connection with the first trial and we do not believe they carried over into her resentencing, which occurred some 19 months following her original sentencing. Although the judge acknowledged at the resentencing that he had a "hard attitude" toward narcotic

dealing, he did not indicate he retained his attitude toward giving a maximum sentence for this type of offense. In fact, the results of the hearing indicate the contrary. The defendant was sentenced well below the maximum allowed by law, a fact suggesting defendant's sentence was "tailored to the particular circumstances of the case and the offender". *People v McFarlin, supra,* 574.

Second, a review of the sentencing proceeding transcript reveals that the judge properly exercised his discretion in imposing sentence and did not, as defendant contends, base his decision solely on a "policy" of cracking down on drug traffickers. The decision was based on several factors. For example, the court considered complimentary letters sent to the court by correction officers recommending leniency for defendant. The court also considered the impact a harsh sentence would have on defendant's pending child custody dispute.

In short, this case is distinguishable from *People v Chapa, supra,* where a local policy of mandatory prison terms for heroin dealers prevented the judge from exercising his sentencing discretion. To the contrary, the judge here tailored the sentences imposed on each codefendant involved to meet their unique characteristics. Additionally, the judge rewarded what appears to be a positive attitude change by the defendant by lowering her minimum sentence from 10 years to 9 years.

Affirmed.