PEOPLE v ALLEN

Docket No. 78-1990. Submitted February 19, 1981, at Detroit.—Decided September 9, 1981. Leave to appeal denied, 412 Mich
——.

Clinton Dale Allen was convicted of second-degree murder in Recorder's Court of Detroit, Harvey F. Tennen, J. At the time of the crime defendant was 16-1/2 years old. He was arrested and held as a material witness. He was not given *Miranda* warnings, a lawyer, immunity or any of the constitutional or statutory safeguards afforded juveniles. During questioning, he made an inculpatory statement to detectives. Defendant was the sole prosecution witness at a preliminary examination resulting in two brothers being bound over on charges of first-degree murder. Seven months later one brother was permitted to plead guilty to second-degree murder and the other brother was given transactional immunity. In exchange, the brothers agreed to testify against defendant and his brother. Defendant was then arrested and charged with first-degree murder. Defendant appealed, alleging that the prosecutor abused his discretion in charging him with first-degree murder, that certain jury instructions were misleading, that the court erred in not allowing the defense to bring out the acquittal of defendant's brother as affecting the credibility of the prosecution's witnesses, and that the prosecutor's appeal to the jury to convict the defendant to ensure that someone was punished for the crime in view of the deal with the prosecution witnesses requires reversal. *Held:*

1. A prosecuting attorney has broad discretion in exercising his charging function, however, he may not exercise his discretion in such a manner as to violate constitutional principles. The prosecutor's decision to originally characterize defendant as a material witness only to turn around and charge him as a

REFERENCES FOR POINTS IN HEADNOTES
[1, 5] 21A Am Jur 2d, Criminal Law § 836.
  63 Am Jur 2d, Prosecuting Attorneys § 26.
[2] 75 Am Jur 2d, Trial §§ 573-575.
[3] 5 Am Jur 2d, Appeal and Error § 623, 891.
[4] 5 Am Jur 2d, Appeal and Error § 884.
[6] 75 Am Jur 2d, Trial § 280.

principal in the crime seven months later raises serious doubts as to his motives and bears close scrutiny because, wittingly or unwittingly, this decision had a profound effect on the fairness of defendant's trial. The prosecution obtained inculpatory statements from the defendant while he was in custody, not represented by counsel and not given *Miranda* warnings. The Juvenile Court Rules require that any child taken into custody, whether or not considered a suspect in a crime, be taken promptly before the juvenile court. Defendant's testimony at the preliminary hearing occurred three days after his interrogation and was made without benefit of counsel. He was not informed of· his right against self-incrimination nor did he waive it. His appearance was subpoenaed and insured by continuous incarceration without bond. It cannot be said his testimony was voluntary. Under the circumstances, the court abused its discretion in allowing the prosecutor to introduce defendant's inculpatory statements for impeachment purposes.

2. On retrial, the court should conform its instructions to the applicable Criminal Jury Instructions.

3. The court did not err in not allowing the defense to inform the jury that defendant's brother had been acquitted by a jury.

4. On retrial, the prosecutor should refrain from arguments which interject issues broader than the guilt or innocence of the accused.

Reversed and remanded.

1. Prosecuting Attorneys — Criminal Charges.

A prosecuting attorney has broad discretion in exercising his charging function, however, he may not exercise his discretion in such a manner as to violate constitutional principles.

2. Constitutional Law — Fair Trial — Jury Instructions.

A defendant's right to a fair trial entails the principle that a jury may not be instructed in a manner either erroneous or misleading.

3. Appeal — Homicide — First-Degree Murder — Jury Instructions — Malice.

An allegation of error in a trial court's jury instructions on the element of malice in a trial for first-degree murder does not require objection at trial in order to be preserved for appeal; where the instructions were so erroneous as to have denied the defendant a fair trial, manifest injustice has been shown.

4. Trial — Cross-Examination — Appeal.

The extent and control of cross-examination lies in the sound

discretion of the trial court; a decision of the trial court in regard to the scope of cross-examination will not constitute reversible error absent a clear abuse of discretion.

5. PROSECUTING ATTORNEYS — CRIMINAL LAW.

Prosecuting attorneys are accorded great latitude regarding their arguments and conduct, however, it is paramount that prosecutors pursue any lawsuit with as equal a concern for ensuring a defendant a fair trial as for convicting him.

6. CRIMINAL LAW — PROSECUTING ATTORNEYS — CLOSING ARGUMENTS.

A defendant's opportunity for a fair trial may be jeopardized when the prosecution interjects issues broader than the guilt or innocence of the accused, such as appealing to a jury's civic duty.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Maura D. Corrigan,* Assistant Prosecuting Attorney, for the people.

*Nora J. Pasman,* Assistant State Appellate Defender, for defendant on appeal.

Before: D. C. RILEY, P.J., and BASHARA and MAC-KENZIE, JJ.

D. C. RILEY, P.J. Defendant, charged with first-degree murder, MCL 750.316; MSA 28.548, and convicted by a jury of second-degree murder, MCL 750.317; MSA 28.549, was sentenced to life in prison. He appeals as of right, alleging more than a dozen errors which, he asserts, require reversal and discharge.

Prior to turning to the issues raised on appeal, it is necessary that we recite some of the more salient facts, since several of defendant's allegations of error are intricately intertwined with the

unique circumstances under which defendant was brought to trial.

In the early morning hours of September 21, 1976, the victim was taken in her car to the Detroit apartment of Truman Taylor. Taylor, Charles and Ronald Burgess, defendant, his girlfriend and his brother, Gary Allen, were present. Several of those present engaged in what was apparently forced sexual intercourse with the victim and, in addition, performed other deviant acts upon her such as spraying insecticide on her genital area and forcing a broomstick into her rectum.

Although the testimony is conflicting, someone came up with the idea that the victim should be killed. To that end, all left Taylor's apartment in the victim's car. Defendant's girlfriend was dropped off at defendant's house but the others drove to Belle Isle where, in a wooded area of the island, the victim was forced from her car and repeatedly stabbed. She was found later that morning, remarkably, still alive, but died on arrival at the hospital at approximately 10:45 a.m. According to the medical examiner who performed the autopsy, the victim had been stabbed some 21 times.

All participants, except defendant and his girlfriend, were arrested later that day. Defendant's brother, Gary, made a statement and was released. Complaints were issued, however, against Taylor and both of the Burgess brothers. Defendant, who was approximately 16-1/2 years old at the time of the offense, was arrested on September 30, 1976, by the Indiana authorities where he was living with his girlfriend at the home of his aunt and uncle. Defendant was held in Indiana as a "material witness" against the Burgess brothers and Taylor. As defendant was considered only a "witness" and not a "suspect" at that time, he was not

given *Miranda*[1] warnings, a lawyer, immunity, or any of the constitutional and statutory safeguards afforded juveniles.

After having been detained in Indiana for three days, defendant was interrogated by Detroit homicide detectives to whom defendant gave an inculpatory statement. Defendant and his girlfriend were then returned to Detroit where defendant was held at the Wayne County Youth Home. The day after his return, defendant testified at Ronald Burgess's preliminary examination as the prosecution's sole witness. Apparently, defendant was not advised by the judge that anything he might say could be used against him in a prosecution charging him with complicity in the murder.

At the examination, the defendant testified to the aberrant activities that took place in Taylor's apartment and their departure to Belle Isle. Defendant's testimony charged Ronald Burgess with the initial sexual attack on the victim and charged the Burgess brothers as the principal culprits who tortured the victim. According to defendant, it was Ronald who had decided that the group should go to Belle Isle to kill the girl and it was Ronald who repeatedly stabbed the victim. Finally, defendant testified that Ronald threatened to kill him if he, defendant, did not stab the victim too. So, he stated, he pretended to do so.

At the close of the examination, the Burgess brothers were bound over on charges of first-degree murder. Truman Taylor was never charged.

In the ensuing seven months there was no apparent change in the posture of the case. On April 18, 1977, however, the day scheduled for the Burgesses' trial, a bargain was struck. The Burgess

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966).

brothers agreed to testify against defendant and his brother Gary in exchange for a plea by Ronald to second-degree murder with, *inter alia,* a 10- to 15-year sentence bargain. In addition, Charles Burgess was given complete transactional immunity for his testimony. Warrants for the arrest of defendant and his brother were obtained that day since, at the plea hearing, Ronald charged the defendant and his brother Gary with doing the same acts which defendant had previously testified that Ronald and Charles had performed. Defendant was immediately arrested and held in the Wayne County Youth Home.

The first several issues raised on appeal ask us to consider, essentially, whether the proceedings upon which this conviction is based are judicially sound and consistent with our sense of fair play. To that end we have thoroughly reviewed the record and are left with the firm conviction that error committed early in the proceedings, prior to the time of defendant's trial, resulted in substantial prejudice to the defendant and mandates a new trial.

Defendant's first allegation of reversible error is that the prosecution abused its discretion by charging the defendant with first-degree murder following the plea agreement struck with the Burgess brothers. The argument is essentially as follows. At the outset of the investigation, that is by October 4, 1976, the prosecutor deemed defendant sufficiently credible so as to use defendant as the sole witness against Taylor and the Burgess brothers. Therefore, the defendant postulates, the prosecutor abused his discretion when, seven months later, he chose to believe the testimony of the Burgesses, who formed the sole basis of the prosecution against defendant.

There can be no doubt that a prosecutor has broad discretion in exercising his charging function. *People v Evans,* 94 Mich App 4, 6-7; 287 NW2d 608 (1979). As noted in *Evans,* however, this discretion is not without limits. It is well-settled law that a prosecutor is prohibited from exercising his discretion in such a manner as to violate constitutional principles. *Bordenkircher v Hayes,* 434 US 357; 98 S Ct 663; 54 L Ed 2d 604 (1978).

In the instant case, the prosecutor contends that his office acted beyond reproach and that defendant was not charged initially because there was insufficient evidence to arrest him. In so arguing, however, the prosecutor has failed to substantiate this claim and has been equivocal as to what information his office possessed concerning defendant's involvement in the crime at the time it was decided to label him as a res gestae witness. To the contrary, a review of the record suggests that the prosecutor had ample information to charge all the people present at the apartment where the victim was first sexually assaulted and at Belle Isle where she was stabbed.

Given the broad, discretionary charging authority of the prosecutor, we are not prepared to hold that the prosecutor abused his discretion in charging the defendant. Beyond the fact that a prosecutor may not knowingly use false testimony, *Napue v Illinois,* 360 US 264; 79 S Ct 1173; 3 L Ed 2d 1217 (1959), Code of Professional Conduct and Canons, DR 7-103(A), we believe that the credibility of Ronald Burgess is not the responsibility of the prosecution but is more appropriately left to a jury of twelve persons.

Despite what we have said to this point, we are of the opinion that the prosecutor's original decision to characterize defendant as a material wit-

ness, only to turn around and charge him as a principal in the crime seven months later, raises serious doubts as to his motives and bears close scrutiny because, wittingly or unwittingly, this decision had a profound effect on the fairness of defendant's trial.

Our concern in this case arises from the following facts. Despite the fact that the prosecutor appeared to have sufficient evidence with which to charge the defendant, he instead characterized defendant as a material witness. Accordingly, defendant was given no lawyer, no *Miranda* warnings, nor any of the constitutional and statutory safeguards afforded juveniles. In addition, a statement was taken from defendant despite the fact that it contained admissions which could form a link in the chain of evidence tending to incriminate him. Finally, defendant made incriminating statements at the Burgesses' preliminary examination without being advised of his rights against self-incrimination.

The question then becomes: has there been an abuse of the prosecutor's discretion to charge which has disturbed the delicate balance between protecting the interests of society and the rights of the accused? Further, if that balance has been disturbed, can it be restored for purposes of retrial or must we find that there is no way to restore that balance and, thereby, release this defendant?

Our considered review of the record persuades us that reversal on the ground of prosecutorial abuse of discretion is not mandated here. Essentially, the prejudice claimed by the defendant is two-fold: (1) the loss of the protection of juvenile court jurisdiction and (2) the procurement of defendant's incriminating statement and testimony while he was in custody and not represented by counsel or given *Miranda* warnings.

As to the first claim of prejudice, we cannot agree. A careful reading of the juvenile court waiver opinion convinces us that even if a hearing or waiver had been conducted seven months earlier, when defendant was 16 years and 10 months old, the result would have been the same. While we agree that any delay when dealing with a juvenile involves the high risk that beneficial options will become foreclosed, we cannot agree that the record supports defendant's claim that had he been under 17-1/2 years old jurisdiction would not have been waived.

Our reading of the waiver opinion convinces us that, while the option to retain defendant in the juvenile system was effectively foreclosed because he was 17-1/2 years old (and not acceptable in one of the maximum security state juvenile facilities),[2] it does not follow that had the option been available (because the hearing would have been held while defendant was under 17) it would have been exercised for this defendant. In fact, the record clearly *evidences that it would not.* The waiver of the defendant would have been dictated by the profile that was carefully developed by the juvenile authorities from which they concluded waiver was appropriate and ultimately in the best interests of the defendant. Thus, we find that the delay in charging defendant did not, in fact, result in his loss of protection of juvenile court jurisdiction.

Defendant's second claim of prejudice, that his statements and testimony were procured while in custody and without benefit of counsel, is more substantial. These statements, ruled coerced as a matter of law but held admissible for purposes of impeachment, stand as the remaining source of claimed prejudice to the defendant.

---

[2] MCL 803.302(b); MSA 25.399(52)(b).

Juveniles are to be afforded special protection under our laws. In *In re Gault,* 387 US 1; 87 S CT 1428; 18 L Ed 2d 527 (1967), the United States Supreme Court held that the constitutional provision against self-incrimination is equally applicable to juveniles as it is with respect to adults. *Id.,* 55. The New York procedures to the effect that confessions *or admissions* can be obtained only after release of the juvenile to his parents or after the juvenile is taken to Family Court, is cited approvingly. *Id.,* 48-49. The Supreme Court held:

"This Court has emphasized that admissions and confessions of juveniles require special caution. * * * 'And when, as here, a mere child [15 years old]—an easy victim of the law—is before us, special care in scrutinizing the record must be used.' " *Id.,* 45.

The Court continued:

"The participation of counsel will, of course, assist the police, Juvenile Courts and appellate tribunals in administering the privilege. If counsel was not present for some permissible reason when an admission was obtained, the greatest care must be taken to assure that the admission was voluntary, in the sense not only that it was not coerced or suggested, but also that it was not the product of ignorance of rights or of adolescent fantasy, fright or despair." *Id.,* 55.

The Juvenile Court Rules of 1969 set out specific procedures to assure that a child is taken promptly before the juvenile court. See JCR 1969, 2.2, 3.1, 4, 6. Furthermore, in *People v Wolff,* 23 Mich App 550, 552; 179 NW2d 206 (1970), this Court specifically found that the failure to take a minor defendant before the juvenile court immediately, as required by MCL 764.27; MSA 28.886, violated defendant's right to due process and inval-

idated his confession. See also MCL 712A.14, 712A.16; MSA 27.3178(598.14), 27.3178(598.16).

Clearly, none of those procedures cited above were followed here. That defendant was not considered an accused is not relevant. The juvenile court procedures apply to *any* juvenile who is taken into custody. See MCL 712A.16; MSA 27.3178(598.16) and JCR 1969, 2.

With regard to defendant's testimony at the Burgess brothers' preliminary examination, some three days after his interrogation, the defendant, without benefit of counsel, was neither informed of his privilege against self-incrimination nor did he waive it. See *People v Poma,* 96 Mich App 726, 732; 294 NW2d 221 (1980). Further, his appearance was subpoenaed and insured by continuous incarceration without bond. Under these facts, it cannot be said that his testimony was voluntary. *Cf. People v Thompson,* 97 Mich App 319, 322; 293 NW2d 812 (1980), *People v Ewing,* 99 Mich App 110; 297 NW2d 628 (1980).

The prosecutor's urgings that the Sixth Amendment "would seem to afford no protection to those not yet accused", *United States v Marion,* 404 US 307, 313; 92 S Ct 455; 30 L Ed 2d 468 (1971), misses the mark. The point is that a juvenile has the right under the prevailing laws of the State of Michigan to be immediately taken before the juvenile authorities, whether as defendant or witness, before any statements are taken. That did not happen here.

On the particular facts of this case, we are persuaded that when the police decided to characterize defendant as a material witness they had a duty to inform him of his constitutional rights. This is particularly true where, as here, the police knew at a minimum that defendant was present at

the scene of the crime and may have been an active participant and in light of the defendant's age and the protection our society insists be afforded juveniles. Having failed to protect his witness, we are of the opinion that the trial judge abused his discretion when he permitted the prosecutor to use defendant's inculpatory statements for impeachment purposes. That ruling effectively foreclosed defendant's opportunity to take the stand in his own behalf and this was particularly prejudicial since defendant's trial was essentially a credibility contest between Burgess and defendant. As such, it was necessary that the jury be able to hear them both.

Therefore, in light of the particular facts of this case, we hold that for purposes of retrial the defendant's position should be restored to that which it would have been had he been accorded his constitutional rights as a juvenile. His statements at the time of interrogation in Indiana and his testimony at the preliminary examination of the Burgess brothers may not be used as substantive evidence or for impeachment purposes. *Harris v New York,* 401 US 222; 91 S Ct 643; 28 L Ed 2d 1 (1971).

In light of the fact that this case must be retried, there are several alleged trial errors that require our consideration.

Defendant contends that the jury instructions were so misleading as to require reversal in that, although the court's initial instructions were correct, its later instructions told the jury that a finding of malice was not required to convict defendant of second-degree murder.

It is the trial judge's responsibility to insure that cases are presented to the jury in an intelligent manner so that the jurors may have a clear and

correct understanding of what it is they are to decide. *People v Townes,* 391 Mich 578, 587; 218 NW2d 136 (1974). The defendant's right to a fair trial entails the principle that a jury may not be instructed in a manner either erroneous or misleading. *People v Liggett,* 378 Mich 706, 714; 148 NW2d 784 (1967). In addition, where the instruction pertains to the essential element of malice, an objection at trial is not required to preserve the issue for appeal. *People v Goodard (On Rehearing),* 86 Mich App 537, 539; 272 NW2d 716 (1978).

In the instant case, the initial instructions accurately stated the law the jury was to follow. The judge's supplementary instructions, however, were confusing, misleading and essentially told the jury that malice was not required to convict the defendant of second-degree murder. Since the law in this area was recently given exhaustive treatment by another panel of this Court, *People v Burgess,* 96 Mich App 390; 292 NW2d 209 (1980), we will not prolong our discussion of this issue. Conformance with the applicable Michigan Criminal Jury Instructions should prevent any error from recurring on retrial. See also *People v Hill,* 94 Mich App 777; 288 NW2d 408 (1979).

Next, defendant contends that the trial court erred in not allowing the defense to bring out Gary Allen's acquittal as affecting the Burgess brothers' credibility. According to the defendant, a limitation on cross-examination which prevents a defendant from placing before the jury facts from which prejudice or lack of credibility of a prosecution witness might be inferred constitutes a denial of the right of confrontation guaranteed by the Sixth Amendment.

After reviewing the entire record, we conclude that the court's action in precluding cross-exami-

nation in this regard did not constitute reversible error. It is well settled that the extent and control of cross-examination lies within the sound discretion of the trial judge. *People v Johnston,* 76 Mich App 332; 256 NW2d 782 (1977), and a court's decision in that regard will not constitute reversible error absent a clear abuse of discretion. *People v Taylor,* 386 Mich 204; 191 NW2d 310 (1971).

We are cognizant of the rule that the trial judge's discretion must be exercised with due regard for a defendant's constitutional rights. *People v Bell,* 88 Mich App 345, 348; 276 NW2d 605 (1979). Furthermore, we agree with the defendant's position that courts have generally granted defendants wide latitude in cross-examining prosecution witnesses with respect to their motive for testifying. See *United States v Brown,* 546 F2d 166 (CA 5, 1977), *People v Sesson,* 45 Mich App 288, 301-302; 206 NW2d 495 (1973). In the instant case, the jury was informed very early on of reasons why the Burgess brothers might be considered biased, prejudiced and incredible witnesses. The following appears in the prosecutor's opening statement:

*"[Assistant Prosecutor]:* You will hear from Ronald Burgess that one of the reasons that he is testifying here today is that he was allowed to plea *[sic]* to murder in the second degree rather than murder in the first degree. But you will also hear there were other reasons why he is testifying here. One of those reasons is that he is not the type of person who wants to take the wrap *[sic]* all by himself, especially when there are people who are unconvicted, who are as guilty or more guilty than himself. And he is going to tell you now what the involvement of those people were."

Defendant's theory, that Ronald Burgess should not be believed because his sole motivation for

testifying against defendant was to seek revenge against defendant, was also placed before the jury in defendant's opening argument,[3] the clear import of which was that Ronald Burgess would go so far as to commit perjury in order to see defendant convicted.

On these facts, therefore, we conclude that evidence of Gary Allen's acquittal would have added little to the question of Ronald Burgess's credibility. The jury was well aware of Ronald's possible motives in testifying and it is our considered opinion that evidence of Gary Allen's acquittal would have been cumulative at best. In addition, we are of the opinion that the proffered evidence was only minimally relevant since acquittal of defendant's brother in a separate trial by a separate jury would not make defendant's guilt more probable or less probable than it would be without the evidence. See MRE 1977, 401. In the present case, the judge was justified in concluding that the prejudicial effect of the evidence would have outweighed its probative value, *People v DerMartzex,* 390 Mich 410; 213 NW2d 97 (1973), since the admission of the testimony might have caused the jury to draw an inference that since another jury disbelieved Burgess it should too.

Finally, defendant contends that the prosecutor committed reversible error when, during his closing argument, he appealed to the jury to convict

---

[3] *"[Defense Attorney]:* Ronnie Lee Burgess was already convicted of another serious felony. Now, ladies and gentlemen, last April Ronnie Lee Burgess made a very advantageous plea bargain. Even so the evidence is going to show that Ronnie Lee Burgess believes that the only reason he was caught—that the only reason he was brought to justice and had to plead guilty to Martha Wolf's murder is that this young man, Clinton Dale Allen, did what he should and testified against him. Ronnie Lee Burgess hates Dale Allen. Ronnie Lee Burgess will testify that he probably would do anything he could to hurt him, even to the extent of trying to put him away for the rest of his life."

defendant, not on the basis of the evidence, but in order to ensure that someone was adequately punished for the crime because the "deal" with Ronald Burgess allowed him to escape with relatively light punishemnt.

It is paramount that prosecutors pursue any lawsuit with as equal concern for ensuring a defendant a fair trial as for convicting him. *People v Rohn,* 98 Mich App 593, 596; 296 NW2d 315 (1980). A defendant's opportunity for a fair trial may be jeopardized when the prosecutor injects issues broader than the guilt or innocence of the accused, *People v Bryan,* 92 Mich App 208, 221; 284 NW2d 765 (1979), or when he appeals to a jury's civic duty. *People v Hooks,* 101 Mich App 673; 300 NW2d 677 (1980). On retrial, therefore, we caution the prosecutor to refrain from such arguments.

In light of our disposition of this case, defendant's other issues need not be addressed.

Reversed and remanded for further proceedings consistent with this opinion.