# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

VICTOR LEE WALKER,

Defendant-Appellant.

UNPUBLISHED
September 12, 2017

No. 330441
Wayne Circuit Court
LC No. 99-011351-01-FC

Before: TALBOT, C.J., and SAWYER and STEPHENS, JJ.

PER CURIAM.

Defendant appeals by right the November 17, 2015 trial court order that denied defendant's seven motions: for a new trial, to correct invalid sentence, for resentencing, for an evidentiary hearing, for a *Ginther*[1] hearing, to dismiss for violation of due process, and for bond pending appeal. On August 2, 2000, defendant was convicted by a jury of kidnapping, MCL 750.349; felonious assault, MCL 750.82; and felony firearm, MCL 750.227b. On August 17, 2000, defendant was sentenced as a habitual second offender, MCL 769.10, to serve concurrent terms of 18 to 40 years for the kidnapping charge and two to six years for the felonious assault charge, consecutive to two years' imprisonment for the felony firearm charge. We remand for the trial court to articulate its reasoning for denying defendant an evidentiary hearing on defendant's claim of newly discovered evidence and for resentencing consistent with this opinion.

## I. BACKGROUND

Defendant and two of his brothers were tried and convicted together for the kidnapping and assault of Kenyon Barkley. This Court affirmed the convictions of defendant's brothers.[2] There, the Court summarized the facts as follows:

[t]he complainant testified that he was abducted on a city street by a man brandishing a gun. He was taken at gunpoint to a nearby house where two other

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[2] *People v Walker*, unpublished opinion per curiam of the Court of Appeals, issued May 21, 2002 (Docket Nos. 230191, 230192).

armed men, one of them defendant Michael Walker, were present. The victim's shirt, money and jewelry were removed, he was pistol whipped about the head and face and a cocked shotgun was placed in his mouth. He was injured and bleeding when he was taken to the basement where his hands and head were taped with black electrical tape and his ankles were chained to a bed. Over the next three days the victim was confined to the basement where he was brutalized by the men who then included defendant, Keith James Walker, and was kept without food, water or toilet facilities. On the third day he was able to free himself and escape. He went to a nearby friend's home where he washed up, changed clothes, and then took a cab to the police station where he tried to tell his story. The officers testified that the victim was injured, tired, dizzy and emotional, at times crying and disoriented. [*People v Walker*, unpublished opinion per curiam of the Court of Appeals, issued May 21, 2002 (Docket Nos. 230191, 230192)].

This is defendant's first hearing before this Court. Defendant's first appeal of right was not filed timely by appellate counsel. On August 16, 2011, the trial court, via a successor to the trial judge, reissued defendant's order of judgment under MCR 6.428[3] based on appellate counsel's ineffective assistance in failing to file the appeal. On September 26, 2011, defendant, in propria persona, moved the trial court for a new trial that was supplemented with the assistance of counsel on June 29, 2012. The motion lingered without a hearing until the trial court, via a second successor judge, ordered the prosecution to file a response on August 28, 2014. The prosecution filed its answer on October 31, 2014. Still there was no hearing or ruling. Sometime thereafter, defendant was appointed counsel. Subsequently, defendant filed the seven motions that are the subject of this appeal which were denied on November 6, 2015.

## II. MOTION FOR A NEW TRIAL

Defendant argues that it was an abuse of discretion for the court to deny defendant a new trial without first having held an evidentiary hearing to hear the recantation testimony of Barkley, the only complaining witness. Defendant also argues that Barkley's recantation is newly discovered evidence.

## A. STANDARD OF REVIEW

We review for an abuse of discretion the trial court's decision to deny a new trial and decision whether to hold an evidentiary hearing. *People v Terrell*, 289 Mich App 553, 558-559;

---

[3] MCR 6.428 provides as follows,

> If the defendant did not appeal within the time allowed by MCR 7.204(A)(2) and demonstrates that the attorney or attorneys retained or appointed to represent the defendant on direct appeal from the judgment either disregarded the defendant's instruction to perfect a timely appeal of right, or otherwise failed to provide effective assistance, and, but for counsel's deficient performance, the defendant would have perfected a timely appeal of right, the trial court shall issue an order restarting the time in which to file an appeal of right.

797 NW2d 684 (2010); *People v Unger*, 278 Mich App 210, 232 216-217; 749 NW2d 272 (2008). "This Court will find an abuse of discretion if the trial court chose an outcome that is outside the range of principled outcomes." *People v Schaw*, 288 Mich App 231, 236; 791 NW2d 743 (2010). "The trial court has discretion whether to grant a new trial on the basis of recanting testimony, and due regard must be given to the trial court's superior opportunity to appraise the credibility of the recanting witnesses and other trial witnesses." *People v Canter*, 197 Mich App 550, 560; 496 NW2d 336 (1992). "[M]otions for a new trial on the ground of newly-discovered evidence are looked upon with disfavor, and the cases where this court has held that there was an abuse of discretion in denying a motion based on such grounds are few and far between." *Webert v Maser*, 247 Mich 245, 246; 225 NW 635 (1929). We review a trial court's findings of fact for clear error. MCR 2.613(C); *People v Hermiz*, 235 Mich App 248, 255; 597 NW2d 218 (1999). "[A] finding of fact is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *People v Ramsey*, 89 Mich App 468, 474; 280 NW2d 565 (1979) (citation and quotation marks omitted).

## B. ANALYSIS

A new trial may be granted whenever a party's substantial rights are materially affected and there was "[m]aterial evidence, newly discovered, which could not with reasonable diligence have been discovered and produced at trial." MCR 2.611(A)(1)(f).

> For a new trial to be granted on the basis of newly discovered evidence, a defendant must show: (1) the evidence itself, not merely its materiality, was newly discovered; (2) the newly discovered evidence was not cumulative; (3) the party could not, using reasonable diligence, have discovered and produced the evidence at trial; and (4) the new evidence makes a different result probable on retrial. [*People v Cress*, 468 Mich 678, 692; 664 NW2d 174 (2003)].

"[E]vidence is newly discovered if it can be shown to have been unknown to the defendant or his counsel at the time of trial." *People v Burton*, 74 Mich App 215, 222-223; 253 NW2d 710 (1977). "[N]ewly available evidence is not synonymous with newly discovered evidence sufficient to warrant a new trial." *Id*. at 562. "The discovery that testimony introduced at trial was perjured may be grounds for a new trial." *People v Mechura*, 205 Mich App 481, 483; 517 NW2d 797 (1994). "However, where newly discovered evidence takes the form of recantation testimony, it is traditionally regarded as suspect and untrustworthy." *Canter*, 197 Mich App at 559. "There is no form of proof so unreliable as recanting testimony." *People v Van Den Dreissche*, 233 Mich 38, 46; 206 NW 339 (1925) (citation omitted). "The courts examine the recanting affidavits of witnesses who seek to convince them of their former perjury with the utmost care." *People v Andrews*, 360 Mich 572, 577; 104 NW2d 199 (1960).

Barkley's affidavit provided that "[o]n the evening of Friday, October 8, 1999, [he] was involved in a 'fist-fight' with Lee Walker . . . when [Lee] approached [him] and asked [him] 'Did I know who the person was that shot his brother (Victor Walker).' " Barkley stated that Lee "struck [him] in the face" and "slammed" him to the ground. After the fight, Barkley ran to a neighbor's home. When the neighbor did not answer, Barkley stated he "flagged down a cab" and took it to the tenth precinct. Barkley told officers at the precinct that he had been kidnapped

and assaulted by defendant and two of his brothers "in order to make the police take [his] complaint seriously." Barkley stated that he "was also holding a grudge against the Walkers" because of the fist-fight Lee Walker started with him and filed a complaint against "all of the Walkers" to get revenge against Lee Walker. Barkley stated that when he did begin to feel as if what he was doing was wrong and expressed to Officer Alfred Thomas that he was not going to appear for court, he was threatened by Officer Thomas that if he did not appear in court, he would be arrested on a pending warrant for domestic violence. Barkley's affidavit stated that he "falsely testified on the witness stand in court, that the Walkers (Lee Walker, [defendant], Keith Walker, and Michael Walker) kidnapped, and assaulted [him], in order to make [his] complaint appear to be truthful."

The court denied defendant's motion for an evidentiary hearing without considering any of the factors listed in *Cress*:

> *Court*.   Well, at this point that's too much detail.  Appellant counsel, do you agree that a complainant who recanted is now serving time for second degree murder in the Department of Corrections.

> *Defense Counsel*.  Yes, your Honor.

> *Court*.  Doesn't that fact *alone* cause a jaundiced view of his recantation?

> *Defense Counsel*.  Recantation, I would agree with the Court.  Recantation at --

> *Court*.  Well, someplace [sic]--

> *Defense Counsel*.  – all is a jaundice – presents a jaundice --

> *Court*.  Someplace [sic] the complainant was saying now he recants is committing perjury, correct?

> *Defense Counsel*.  That's correct, your Honor.  [Emphasis added].

> *Court*.  The motion for a new trial based on supposed newly discovered evidence and/or the recantation of the complainant is denied.

The court's only articulated basis for the decision to deny the motion without an evidentiary hearing was Barkley's prison status. Barkley's prison status is not a sufficient basis for the denial. We also decline to adopt defendant's argument, that it is automatically error for a judge who did not hear the trial to deny a motion for new trial based upon what is characterized by the moving party as newly discovered evidence without first holding an evidentiary hearing.  In many circumstances, a successor judge might find such a hearing helpful because without it that judge has little basis upon which to make the credibility finding which *Carter*, *supra*, asks us to give due regard if not deference.  "Although our general court rules do not require that the testimony of an affiant be taken at a hearing on a motion for a new trial, the practice is nonetheless encouraged." *People v Blair*, 44 Mich App 469, 471; 205 NW2d 183 (1973).  In this case, however, the record is inadequate for appellate review.  While the court may have had

-4-

other reasons to deny defendant's request for an evidentiary hearing on the motion for a new trial and the motion itself, it did not address them on the record. "The purpose of articulation is to facilitate appellate review." *People v Johnson*, 208 Mich App 137, 141; 526 NW2d 617, 620 (1994). Because the record does not contain any evidence supporting the trial court's denial, remand is appropriate.

## III. PROSECUTORIAL MISCONDUCT

Defendant next argues that the prosecutor's misconduct during his trial warranted a mistrial and on appeal, a reversal. We disagree.

### A. STANDARD OF REVIEW

"Where issues of prosecutorial misconduct are preserved, we review them de novo to determine if the defendant was denied a fair and impartial trial." *People v Thomas*, 260 Mich App 450, 453; 678 NW2d 631 (2004).

"We review a trial court's decision to deny a motion for a mistrial for an abuse of discretion." *People v Dennis*, 464 Mich 567, 572; 628 NW2d 502 (2001). "This Court will find an abuse of discretion if the trial court chose an outcome that is outside the range of principled outcomes." *Schaw*, 288 Mich App at 236.

### B. ANALYSIS

"The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial." *Brown*, 279 Mich App at 134. "[W[e consider issues of prosecutorial misconduct on a case-by-case basis by examining the record and evaluating the remarks in context, and in light of defendant's arguments." *Thomas*, 260 Mich App at 454. Generally, "[p]rosecutors are accorded great latitude regarding their arguments and conduct." *People v Rohn*, 98 Mich App 593, 596; 296 NW2d 315 (1980). They are "free to argue the evidence and all reasonable inferences from the evidence as it relates to [their] theory of the case." *People v Gonzalez*, 178 Mich App 526, 535; 444 NW2d 228 (1989).

Defendant argues three instances of prosecutorial misconduct. Defendant first argues that the prosecutor improperly questioned Officer Fountain as to Barkley's veracity and credibility. While it is improper for a witness to comment on the credibility of another witness, *People v. Buckey*, 424 Mich 1, 17; 378 NW2d 432 (1985), that did not happen here. On direct, the prosecutor asked Officer Fountain whether preliminary reports were a hundred percent accurate and Officer Fountain answered no.

> *Q.* So, there are other, normally there's other interviews that occur after this preliminary complaint report is filed?

> *A.* Oh yeah. More than – Usually a couple to get more and more information.

> *Q.* And why does this normally occur?

*A*. Usually when a person comes in to make the preliminary complaint report, they usually only remember certain parts of it. After they're given some time to think about everything that happened, they tend to remember a lot more than what they give during a preliminary report. That's why it's called a preliminary report.

*Q*. Now, are often times, are these preliminary reports say a hundred percent accurate?

\* \* \*

*A*. No.

The prosecutor's question and Officer Fountain's answer were given in the context of why it was important to follow-up with a complainant after he or she makes a report because a complainant usually recalls more of an event with the passage of time.

Co-defendant's counsel asked Officer Fountain whether complainants sometimes made reports that were "just lies" and gave statements during follow-ups that were lies. Officer Fountain agreed that sometimes complainants lied and that the preliminary report was only as truthful as the person providing the information.

*Q*. Witnesses come into the police station and make reports at times that are just lies, is that true?

*A*. Yes. Sometimes they do lie.

*Q*. All right. And witnesses later during follow-up give further statements to police that are lies, is that true?

*A*. Yes. Sometimes they, they lie.

*Q*. Okay. So, it's not always that they are remembering something that occurred, maybe they're coming in and lying. Would you agree with that?

*A*. Sometimes they lie.

On redirect, the prosecutor brought up co-defendant's counsel's questions "about people lying when they come to the station . . . to make reports" and "the report that's prepared, being [sic] accurate as the person who made the report[.]" The prosecutor then asked Officer Fountain how he considered a complainant's physical or emotional condition, i.e. his or her demeanor, in determining whether the complainant was telling the truth. Officer Fountain responded, "when someone is injured it's pretty hard to lie about it because you see the physical injuries." Co-defendant's counsel objected to the line of questioning, the court sustained the objection and the prosecutor changed his line of questioning. When viewed in context, it is clear that co-defendant's counsel opened the door to questioning regarding the complainant's credibility and veracity and that the prosecutor's remarks were in response to that cross-examination. Whatever error imputed to the colloquy was corrected by co-defendant counsel's timely objection and the

prosecutor's change in questions.  See *People v Stanaway*, 446 Mich 643, 687; 521 NW2d 557 (1994) (timely objection by counsel provides the trial court with an opportunity to cure error); See also *People v Bahoda*, 448 Mich 261, 280; 531 NW2d 659 (1995) ("[W]e do not deem this questioning error requiring reversal because the questioning was brief, was on redirect examination, and was in response to questioning that arguably required some attempt at rehabilitation.").  In this case, the jurors were also instructed that they were the determiners of a witness's credibility and given the standards by which they were to assess credibility.  They were further instructed that a police officer's testimony was to be given the same weight as any other witness.

Defendant next argues that the prosecutor committed misconduct in eliciting testimony from investigator Granger that defendant was a bad person.  The prosecutor questioned Granger about the steps he took to investigate and find defendant after the preliminary complaint report was filed when the following colloquy occurred:

> *Q*. Okay.  And what did you do in order to try to find them?
>
> *A*. I worked with an officer that was very familiar with the individuals names in this incident and –

Granger's testimony was interrupted by an objection from co-defendant's counsel.  In response, the prosecutor moved to strike Granger's answer and rephrased his question, directing Granger to answer the question as to what he did without telling the jury what someone told him.  The court never ruled on the objection nor ordered that the answer be disregarded by the jury.  Defendant argues that Granger's response to the prosecutor's original question conveyed to the jury that defendant had the propensity to commit crimes and was therefore, a bad person, i.e. that defendant was someone known by the police for presumably participation in other crimes.  The prosecutor asked Granger, "what did *you* do" and Granger's answer was neither solicited by nor responsive to that question.  "Unresponsive answers from witnesses are generally not prosecutorial error." *People v Jackson*, 313 Mich App 409, 427; 884 NW2d 297 (2015), app den 499 Mich 916; 877 NW2d 888 (2016); See *People v Hackney*, 183 Mich App 516, 531; 455 NW2d 358 (1990) ("As a general rule, unresponsive testimony by a prosecution witness does not justify a mistrial unless the prosecutor knew in advance that the witness would give the unresponsive testimony or the prosecutor conspired with or encouraged the witness to give that testimony").  The prosecutor immediately moved to strike the unsolicited answer, rephrased the question and gave a direction to the witness to only address what *he did*.  The prosecutor did not commit error in this instance.

Defendant last argues that the prosecutor committed misconduct by improperly shifting the burden of proof to defendant during closing argument.  "A prosecutor may not imply in closing argument that the defendant must prove something or present a reasonable explanation for damaging evidence because such an argument tends to shift the burden of proof." *People v Fyda*, 288 Mich App 446, 463-464; 793 NW2d 712 (2010).  "Also, a prosecutor may not comment on the defendant's failure to present evidence because it is an attempt to shift the burden of proof." *Id*. at 464.

Five sentences into his rebuttal, the prosecutor said, " . . . of all the things that they said about Mr. Barkley, did you once hear them prove what they said in closing argument." Co-defendant's counsel immediately objected that the prosecutor's statement was improper and that the prosecutor knew defendant had no burden. A sidebar occurred where the prosecutor was instructed to use the word "show" instead of prove. The prosecutor continued however to use the word "prove."[4] The court interrupted the prosecutor's closing argument and excused the jury to the jury room. The court reminded the prosecutor of the objection from co-defendant's counsel, that the defense did not have the burden of proof, and that it had instructed the prosecutor to use the word "show." The court stated that it did not want any confusion regarding the burden of proof. The jury was brought back in and the prosecutor continued rebuttal. While the prosecutor's remarks during rebuttal were improper, defendant was not denied a fair and impartial trial as a result of the remarks being said. The remarks were objected to by co-defendant's counsel, the jury heard the reason for the objection, were excused, and the prosecutor was admonished. When the inappropriate remarks continued, the court sua sponte removed the jury and again admonished and instructed the prosecutor. Immediately after rebuttal, the jury was instructed on reasonable doubt, including that the prosecutor must prove each element of the crime and that "[t]he defendant is not required to prove his innocence or to do anything." The jury was also instructed that the lawyer's statements and arguments were not evidence. "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). We agree the prosecutor committed error. However, Defendant was not denied a fair trial where the prosecutor's argument was objected to, the prosecutor was admonished and the jury was properly instructed on which party had the burden of proof. *Bahoda*, 448 Mich at 281.

Defendant argues that the cumulative effect of the prosecutor's misconduct was grounds for a mistrial. "[T]he cumulative effect of several errors can constitute sufficient prejudice to warrant reversal where the prejudice of any one error would not." *People v LeBlanc*, 465 Mich 575, 591; 640 NW2d 246 (2002). "A mistrial should be granted only for an irregularity that is prejudicial to the rights of the defendant . . . and impairs his ability to get a fair trial . . . ." *People v Haywood*, 209 Mich App 217, 228; 530 NW2d 497 (1995) (internal citations omitted). As discussed, two of the instances defendant complains of were not prosecutorial misconduct and the one instance of error did not deny the defendant the right to a fair trial. Therefore, a mistrial was unwarranted.

## IV. EFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that he was denied the effective assistance of counsel before and after trial. Again, we disagree.

### A. STANDARD OF REVIEW

"Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *LeBlanc*, 465 Mich at 579. "The trial court's factual

---

[4] "If she believes that, why didn't she prove it with the statement . . ."; "With all the information she had, why didn't she prove it to you."

findings are reviewed for clear error, while its constitutional determinations are reviewed de novo." *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004). "Because there was no Ginther hearing, our review is limited to errors apparent on the record." *People v Avant*, 235 Mich App 499, 507; 597 NW2d 864 (1999); *People v Lane*, 308 Mich App 38, 68; 862 NW2d 446 (2014).

## B. ANALYSIS

To obtain a new trial based on a claim of ineffective assistance counsel, the "defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136, 143 (2012). "Effective assistance of counsel is presumed, and a defendant bears a heavy burden to prove otherwise." *People v Swain*, 288 Mich App 609, 643; 794 NW2d 92 (2010). "The defendant must overcome the presumption that the challenged action might be considered sound trial strategy." *People v Dalessandro*, 165 Mich App 569, 573; 419 NW2d 609 (1988). "A sound trial strategy is one that is developed in concert with an investigation that is adequately supported by reasonable professional judgments." *People v Grant*, 470 Mich 477, 486; 684 NW2d 686 (2004). "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland v Washington*, 466 US 668, 691; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v McGhee*, 268 Mich App 600, 626; 709 NW2d 595 (2005). "[C]ounsel's failure to call a particular witness is presumed to be trial strategy," *Avant*, 235 Mich App at 508, and will only amount to effective assistance when it deprives the defendant of a substantial defense, *People v Daniel*, 207 Mich App 47, 58; 523 NW2d 830 (1994). "A substantial defense is one that might have made a difference in the outcome of the trial." *People v Kelly*, 186 Mich App 524, 526; 465 NW2d 569 (1990); See *Dalessandro*, 165 Mich App at 573 ("An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.").

Defendant faults trial counsel for failing to call and investigate three witnesses: Artelia Hunter, Mary Patrick, and a man who Barkley testified was sitting on the porch next door to the house that he was forced to enter. Hunter again, was defendant's sister. Her affidavit provided that defendant was shot on September 28, 1999, that defendant had to use a walker in order to "get around for approximately two (2) weeks after he was shot," that she was defendant's caretaker during that time and that defendant stayed at her home for approximately one month after he was shot. Defendant argues that Hunter would have been a valuable witness to inform the jury that defendant was at her home at the time of Barkley's kidnapping and assault and physically unable to participate. Hunter was intended to be an alibi witness. "The failure to call an alibi witness is a tactical decision and not grounds for a claim of ineffective assistance of counsel." *People v Carter*, 43 Mich App 735, 740; 204 NW2d 703 (1972).

Patrick was a neighbor who Barkley testified assisted him after his escape from the house where he was held captive by defendant and his brothers. The man on the porch was an unidentified individual whom Barkley testified was sitting on the porch of the house directly next door to the house he was forced to enter. Patrick's affidavit stated that although Barkley came to her home on the evening of October 8, 1999, she did not allow him to enter and she did not let

him use her phone, or provide him with any money or clothes. Defendant argues that counsel was ineffective for failing to discover Patrick and the man on the porch. However, nothing in the discovery materials provided to counsel made note of the existence, much less the importance, of either person. Neither was mentioned in any statement by Barkley nor was either included on the prosecutor's witness lists. Not until the fourth day of trial did Barkley testify regarding Patrick or to the un-named man on the porch. From this record, we cannot find defense counsel ineffective for not having investigated Patrick or the man on the porch before trial. It was reasonable and even prudent trial strategy for counsel to continue his defense as planned including impeaching Barkley, without focusing on the possible testimony of the previously unknown witnesses. We know in hindsight from Patrick's affidavit that she would have corroborated Barkley's testimony that he came to her home on that night but denied that she admitted him inside her home or gave him clothing. However, this Court will not assess counsel's competence with the benefit of hindsight. *Swain*, 288 Mich App at 645. Defendant submits that the man from the porch next door may have provided exculpatory evidence. Defendant however, also admits that he does not know what the man sitting on the porch might have said. "Given that there was no evidentiary hearing on the matter and nothing in the record concerning what the [man]'s testimony might have been, there are no mistakes apparent on the record with respect to counsel's failure to call" the man on the porch. *People v Seals*, 285 Mich App 1, 21; 776 NW2d 314 (2009)

While defendant's counsel could have attempted to visit either the man or Patrick, on the eve of the fourth day of trial as defendant argues, defendant has not shown that defense counsel's alternate strategy, to use their absence in defendant's favor, was not sound trial strategy. From the beginning, the defense strategy was to point out numerous inconsistencies and incredible statements in Barkley's version of events to invoke reasonable doubt in the minds of the jurors that the crimes took place. Defendant's counsel followed this same strategy when confronted with the existence of Patrick and the man on the porch. He asked Barkley whether he tried to get the attention of the man on the porch. He questioned Barkley why Patrick would have allowed him to leave in a cab if he was disoriented and dizzy. In closing argument, defendant's counsel argued that despite Barkley's insistence that there was a man on the porch next door and that he went to Patrick's house for help, neither witness was presented to corroborate his story. The fact that defense counsel's strategy failed does not establish ineffective assistance of counsel. *In re Ayres*, 239 Mich App 8, 22-23; 608 NW2d 132 (1999). Given this record, we conclude that defendant's performance did not fall below an objective standard of reasonableness. Defendant's request for remand for a *Ginther* hearing is denied.

## V. SENTENCING

Defendant challenges the scoring of his guidelines on both evidentiary and constitutional grounds. Defendant argues that he is entitled to resentencing because the trial court erred in scoring the offense variable (OV) 8. Defendant also argues that he is entitled to remand under *People v Lockridge*, 98 Mich 358; 870 NW2d 502 (2015).

### A. PRESERVATION

"To preserve a sentencing issue for appeal, a defendant must raise the issue 'at sentencing, in a proper motion for resentencing, or in a proper motion to remand filed in the

court of appeals.' " *People v Clark*, 315 Mich App 219, 223-224; 888 NW2d 309 (2016) quoting MCR 6.429(C); *People v Williams*, 147 Mich App 1, 7; 382 NW2d 191 (1985) ("[A]ny objections to the sentencing guidelines must be made on the record at sentencing.") We are unable to know whether defendant objected to the scoring of OV 8 at his 2000 sentencing hearing because no record of that proceeding has been provided. Defendant's current appellate counsel maintains that a transcript of the proceeding was never requested by prior counsel and that due to age, no record of the proceeding now exists. Because *People v Lockridge*, *supra*, was not decided until 2015, defendant would not have objected to his sentencing guidelines based on *Lockridge* at his 2000 sentencing. However, defendant did raise a challenge to the scoring of OV 8 and to his sentencing guidelines under *Lockridge* in a motion for resentencing in the trial court and in a motion to remand for resentencing before this Court. Therefore, defendant's challenges to the scoring of the offense variables and his sentencing guidelines are preserved.

## B. STANDARDS OF REVIEW

"We review a trial court's denial of a motion for resentencing for an abuse of discretion." *People v Puckett*, 178 Mich App 224, 227; 443 NW2d 470 (1989). "This Court will find an abuse of discretion if the trial court chose an outcome that is outside the range of principled outcomes." *Schaw*, 288 Mich App at 236.

This Court reviews a preserved *Lockridge* claim for harmless error beyond a reasonable doubt. *Terrell*, 312 Mich App at 464.

The proper interpretation and application of the statutory sentencing guidelines, MCL 777.11 *et seq.*, are questions of law that this Court reviews de novo. *People v Francisco*, 474 Mich 82, 85; 711 NW2d 44 (2006). "Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence. Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013) (citation omitted).

## C. ANALYSIS

Defendant argues that he is entitled to resentencing based on the trial court's incorrect scoring of OV 8 and under *Lockridge*, the incorrect scoring of OVs 1, 3, 4 and 7. This Court's review of defendant's arguments is hindered by defendant's failure to produce the transcript from his 2000 sentencing hearing and the fact that the trial court provided no explanation or discussion of its decision to deny defendant resentencing at the November 6, 2015 motion hearing. "[T]his Court will refuse to consider issues for which the appellant failed to produce the transcript." *PT Today, Inc v Commr of Office of Fin & Ins Services*, 270 Mich App 110, 151-152; 715 NW2d 398 (2006). However, the transcript of the 2000 sentencing hearing is not necessary to determine whether the trial court erred in the scoring of OV 8.

In 2000, MCL 777.38 read the same as it does today[5]:

(1) Offense variable 8 is victim asportation or captivity. Score offense variable 8 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:

(a) A victim was asported to another place of greater danger or to a situation of greater danger or was held captive beyond the time necessary to commit the offense . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15 points

(b) No victim was asported or held captive. . . . . . . . . . . . . . . . . . . . . . . . 0 points

(2) All of the following apply to scoring offense variable 8:

(a) Count each person who was placed in danger of injury or loss of life as a victim.

(b) Score 0 points if the sentencing offense is kidnapping.

According to defendant's presentence investigation report, defendant was assessed 15 points under MCL 777.38(1)(a). Defendant argues that because he was convicted of kidnapping, he should have been assessed zero points. We agree. Pursuant to MCL 777.38(2)(b), the trial court clearly erred in assessing 15 points where defendant's sentencing offense was kidnapping.[6] When OV 8 is properly scored at zero, defendant's offense variable scoring decreases from 106 points to 91 points, and moves defendant's sentencing grid range from grid cell D-VI to D-V. Since the trial court clearly erred in applying the facts to the OVs, *Hardy*, 494 Mich at 438, and the scoring resulted in an alteration of the minimum sentence range, defendant is entitled to resentencing, *Francisco*, 474 Mich at 89.

Defendant also argues that he is entitled to resentencing under *Lockridge*, where OVs 1, 3, 4 and 7 were scored based on facts not admitted by defendant nor found by the jury beyond a reasonable doubt. Because defendant has already established he is entitled to resentencing as to OV 8, his *Lockridge* challenge is moot. "When this Court is presented with an evidentiary and a constitutional challenge regarding the scoring of the guidelines, the evidentiary challenge must initially be entertained, because if it has merit and requires resentencing, the constitutional or *Lockridge* challenge becomes moot—a defendant will receive the protections of *Lockridge* when he or she is resentenced." *People v Biddles*, 316 Mich App 148, 157-158; 896 NW2d 461 (2016). Accordingly, this Court need not consider defendant's constitutional challenge to his original sentencing because he will receive the protections of *Lockridge* when he is resentenced.

---

[5] MCL 777.38 was added by 1988 PA 317, effective December 15, 1998.

[6] "The sentencing offense is the crime of which the defendant has been convicted and for which he or she is being sentenced." *People v McGraw*, 484 Mich 120, 122 n 3; 771 NW2d 655 (2009).

Remanded to the trial court for it to articulate its reasoning for denying defendant an evidentiary hearing on defendant's claim of new evidence and for resentencing in accord with this opinion. We do not retain jurisdiction.

/s/ Michael J. Talbot
/s/ David H. Sawyer
/s/ Cynthia Diane Stephens